UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELLEN THOMAS, | ) Case No.: 1:16-cv-01337 - JLT |
| Plaintiff, | ) ORDER DIRECTING ENTRY OF JUDGMENT ) IN FAVOR OF DEFENDANT, NANCY A. |
| v. | ) BERRYHILL, ACTING COMMISSIONER OF ) SOCIAL SECURITY, AND AGAINST |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) PLAINTIFF MARY ELLEN THOMAS ) |
| Defendant. | ) |

Mary Ellen Thomas asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff seeks judicial review of the decision denying her applications for SSI benefits, asserting the administrative law judge erred in evaluating the medical record. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

Plaintiff filed applications for disability insurance benefits and SSI on December 13, 2010, alleging disability beginning July 28, 2005. (Doc. 11-4 at 2-3; Doc. 11-7 at 2) While Plaintiff's applications were pending, Dr. Emmanuel Fabella performed a consultative internal medicine evaluation on March 29, 2011, and offered opinions regarding Plaintiff's physical limitations. (Doc. 11-8 at 63, 67) In addition, Drs. Ernest Wong and Joshua Schwartz reviewed the medical record related to Plaintiff's reported impairments and completed physical and mental functional capacity assessments. (*Id.* at 39-60) Thereafter, the Social Security Administration denied both applications at

the initial level on June 6, 2011. (Doc. 11-5 at 2-5, 7-10) The Administration determined Plaintiff's "condition [was] not severe enough to keep [her] from working." (*Id.* at 2, 7) Plaintiff was advised that she could seek reconsideration of the decision within sixty days (*id.*at 5, 9) but there is no indication in the record that Plaintiff appealed the decision. Therefore, the Administration's decision became final.

On January 2, 2013, Plaintiff filed a second application for SSI benefits, "alleging disability beginning November 30, 2012." (Doc. 11-3 at 24) The Social Security Administration denied the application at the initial level on June 21, 2013, and upon reconsideration on August 30, 2013. (*Id.*) Plaintiff requested a hearing, and testified before an ALJ on January 13, 2015. (*Id.* at 24, 45) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on February 20, 2015. (*See id.* at 21) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on July 11, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### **A.     Relevant Medical Evidence**

On March 29, 2011, while Plaintiff's first applications were pending, Dr. Emmanuel Fabella performed a consultative internal medicine evaluation. (Doc. 11-8 at 63) Plaintiff told Dr. Fabella that she began having back pain two months prior to the examination. (*Id.*) She described the pain as "frequent, moderate, radiating down both legs, most especially down the right leg, and burning in quality." (*Id.*) In addition, Plaintiff reported she had "numbness and tingling of both hands, worse on the right," which "caus[ed] her to drop things during the daytime and [kept] her awake with tingling at night." (*Id.*) Dr. Fabella noted that he reviewed images of Plaintiff's cervical spine, including an x-ray from February 2006 and an MRI from November 2006, "which showed mild degenerative arthritis and

narrowing of [the] C6-C7 disc space from degeneration of the disc" and "mild degenerative disc disease at C3-C4 and C4-C5." (*Id.*) After the examination, Dr. Fabella identified the following impairments:

1. Low back pain with sciatica, right leg numbness and right knee hyporeflexia as well as decreased lumbar spine range of motion.

2. Numbness and tingling of both hands, worse on the right, most likely secondary to carpal tunnel syndrome.

3. History of cervical degenerative disc disease.

(*Id.* at 66-67) He opined Plaintiff was "able to lift and carry less than 10 pounds occasionally and frequently secondary to carpal tunnel syndrome." (*Id.* at 67) In addition, Dr. Fabella believed Plaintiff had a "mild to moderate impairment in the use of both hands secondary to numbness as well as essential tremor." (*Id.*) The Social Security Administration determined Plaintiff was not disabled and both applications at the initial level on June 6, 2011. (Doc. 11-5 at 2-5, 7-10)

In November 2012, Plaintiff told Kelly Williamson, PA-C, that pain in her hip and buttocks radiated down both legs. (Doc. 11-9 at 65) Plaintiff reported that she had tried "applying heat and… avoid[ing] exacerbating positions." (*Id.*) Upon examination, Ms. Williamson found no swelling, induration, or warmth. (*Id.* at 66) She determined that Plaintiff "exhibited tenderness on palpation" in her lower back, hips, and mid-buttock. (*Id.*) In addition, Plaintiff's "straight-leg raising test was positive," though her gait and stance were normal. (*Id.*)

In December 2012, Plaintiff reported that she continued to have pain in her hip, right shoulder, and neck. (Doc. 11-9 at 70) Ms. Williamson noted Plaintiff did not have any lower extremity weakness, but "appear[ed] uncomfortable when sitting." (*Id.* at 71) She noted Plaintiff was diagnosed with backache, anxiety disorder, depression, and chronic pain syndrome. (*Id.*) Ms. Williamson referred Plaintiff to a "Behavioral Health provider … to decrease stress." (*Id.* at 72) Plaintiff entered into a "Controlled Medication Contract" for the medications prescribed. (*Id.* at 68, 72)

At a follow-up appointment the following month, Plaintiff reported a "recent increase in depression and anxiety" following the death of her best friend, and said she was ready to see a behavioral health counselor. (Doc. 11-9 at 74) Ms. Williamson noted Plaintiff appeared "somber and … sad." (*Id.* at 75) She also referred Plaintiff to physical therapy "to improve back pain [symptoms] and ordered an MRI. (*Id.* at 76)

In February 2013, Plaintiff had the MRI taken on her lumbar spine. (Doc. 11-8 at 70) Dr. Sean Johnston determined Plaintiff had "[s]pondylotic changes;" disc bulges at the L2-L3, L3-L4, and L4-L5 levels "without evidence of canal stenosis or neural foraminal narrowing;" and a posterior annular tear in the intervertebral disc with [an] accompanying 2-3mm posterior disc bulge resulting in mild left neural foraminal narrowing in conjunction with facet joint hypertrophy" at the L5-S1 level." (*Id.* at 71)

On March 18, 2013 Ms. Williamson completed a residual functional capacity questionnaire, in which she indicated that she saw Plaintiff "monthly since 12/7/2011." (Doc. 11-8 at 74) She reported Plaintiff was diagnosed with lower back pain, chronic pain syndrome, depression, and anxiety. (*Id.*) Ms. Williamson believed Plaintiff's symptoms were "constantly" severe enough to interfere with her ability to concentrate sufficiently to perform simple work-related tasks. (*Id.*) She indicated Plaintiff could sit for five minutes at one time and one hour in an eight-hour day, and stand/walk for thirty minutes at one time and three hours total in an eight-hour day. (*Id.*) Ms. Williamson believed Plaintiff must be permitted "shifting positions at will from sitting, standing or walking," and required hourly breaks of about 15 minutes each. (*Id.*) Further, Ms. Williamson opined Plaintiff could occasionally lift up to ten pounds, but did not have limitations with reaching, handling, or fingering. (*Id.* at 75) She concluded Plaintiff was not physically capable of working an eight-hour day, five-days per week position. (*Id.*) According to Ms. Williamson, Plaintiff had the limitations and restrictions she identified in the questionnaire "since 11/21/2012." (*Id.* at 76)

Ms. Williamson also completed a mental residual functional capacity assessment regarding Plaintiff's limitations and abilities on March 18, 2013. (Doc. 11-8 at 78) Ms. Williamson noted Plaintiff was diagnosed with "Major depressive disorder, Generalized anxiety disorder." (*Id.*) She indicated Plaintiff had no limitations with understanding and memory, though she had slight limitations with the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with others, and perform at a persistent pace. (*Id.* at 78-79) Ms. Williams believed Plaintiff had "exacerbations of major depression which may prevent regular attendance," and her anxiety "prevent[ed] her from being around large groups" because she was "overwhelmed easily," even in the office waiting room. (*Id.* at 79)

In April 2013, Plaintiff visited Ms. Williamson for a refill of her medication. (Doc. 11-9 at 3, 5)

Ms. Williamson noted Plaintiff had a toxicology test, and she tested positive for methamphetamines. (*Id.* at 3) Plaintiff denied using the drugs, and believed "she would only be positive for THC… possibly from a party she attended." (*Id.*) She tested negative for several of her prescription medications, including Tylenol-codeine, benzodiazepines and tramadol. (*Id.*) Ms. Williamson noted Plaintiff violated her controlled substance contract, and informed her that "all controlled substances [would] not be refilled." (*Id.* at 6)

Dr. Lance Portnoff completed a consultative psychiatric evaluation on May 22, 2013. (Doc. 11-10 at 21) Plaintiff told Dr. Portnoff she was married twice— from ages 16 to 18 and 20 to 28—and both her husbands were "mentally and physically abusive." (*Id.*) Plaintiff said she had "OCD[] with symmetry, cleanliness, and a little bit of counting;" and been "depressed for about four years since her mother died of cancer, preceded by the death of a sister in 2007." (*Id.*) Plaintiff reported she was worried, irritable, "stressed by health and family deaths," and had "uncued panic attacks three times a week." (*Id.* at 21-22) She said she "once tried counseling, but did not like it." (*Id.* at 22) Dr. Portnoff found she "demonstrate[d] adequate concentration, persistence, and pace" during the examination. (*Id.* at 23) He found Plaintiff's immediate memory was intact because she recalled three unrelated words, though she only recalled two words after a delay. (*Id.*) Dr. Portnoff opined Plaintiff "present[ed] with moderate depression," but believed her prognosis was "fair, depending upon access/response to an efficacious psychotropic regimen and her underlying health." (*Id.* at 24) Dr. Portnoff concluded Plaintiff was "able to perform simple and repetitive tasks." (*Id.*) "[D]ue to deficits in mental focus from OCD," he believed Plaintiff had "mild limitations in her ability to perform detailed and complex tasks" and "mild to moderate limitations in her ability to instructions from supervisors." (*Id.* at 24-25) Dr. Portnoff also believed Plaintiff had "moderate limitations in her ability to interact with coworkers and the public" and "moderate limitations in her ability to complete a normal workday or workweek without interruptions from a psychiatric condition." (*Id.* at 25)

There are no additional treatment records from Ms. Williamson, and the record suggests Plaintiff did not receive any "further treatment until March 2014, when … [she] presented to Sequoia Family Medical Center for back pain with bilateral leg numbness." (Doc. 11-3 at 29)

///

## B. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of January 2, 2013. (Doc. 11-3 at 26) Second, the ALJ determined Plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine, peripheral neuropathy, and major depressive disorder." (*Id.*) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 27) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), except she can frequently climb ramps and stairs, balance, kneel, and crawl, and occasionally climb ladders, ropes, and scaffolds, stoop, and crouch. She must avoid concentrated exposure to hazards, including moving machinery and unprotected heights. She can occasionally perform detailed and complex tasks, frequently interact with supervisors, but requires additional instruction. She can occasionally interact with co-workers and the public, but is limited to making simple work-related decisions.

(*Id.* at 29) With this residual functional capacity, the ALJ found Plaintiff was "unable to perform any past relevant work." (*Id.* at 32) However, the ALJ determined that "jobs exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 33) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 34)

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ erred in evaluating the medical record by not considering the opinion offered by Dr. Fabella and rejecting the opinions of Ms. Williamson. (Doc. 17 at 6, *see also id.* at 17-22) The Commissioner asserts that "[t]he ALJ appropriately evaluated the medical evidence," and contends the decision to deny benefits should be upheld. (Doc. 20 at 16, emphasis omitted)

## A. Dr. Fabella's opinion

Plaintiff contends, "The ALJ never weighed, discussed, or evaluated this opinion that would limit Plaintiff to sedentary work." (Doc. 17 at 17) Plaintiff acknowledges Dr. Fabella's opinion "pre-dates [the] application date," but contends the ALJ should have addressed the limitations assessed by Dr. Fabella as "courts around the country have found 'that an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability.'" (*Id.* at 18, quoting *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941 (N.D. Tex. 2015)) Further, Plaintiff observes that the Social Security Regulations indicate

the administration "will evaluate every medical opinion … receive[d]." (*Id.*, citing 20 C.F.R. § 416.927(c)(2); *Shafer v. Astrue*, 518 F.3d 1067, 1069 (9th Cir. 2008))

On the other hand, Defendant contends the ALJ was not obligated to address Dr. Fabella's opinion because "evidence from the prior rejected claim is irrelevant to the current disability determination." (Doc. 20 at 14, emphasis omitted) Defendant observes that the administration previously rejected the limitations assessed by Dr. Fabella and concluded that Plaintiff could perform work. (*Id.* at 14-15) Further, Defendant contends the opinion is not "significant or probative" because "Dr. Fabella saw Plaintiff more than one and a half years prior to the alleged onset date of disability," and "Plaintiff does not cite Dr. Fabella's opinion for the proposition that her condition has worsened." (*Id.* citing, e.g., *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989))

In *Fair*, the Ninth Circuit addressed the ALJ's failure to address the opinion of a physician who conducted a consultative examination of the claimant related to a prior application. *Id.*, 885 F.2d at 600. The Court noted the ALJ mentioned the examination "only in passing." *Id.* at 606. Nevertheless, the Court found no error because the opinion of the physician "predate[d] the period at issue, and [was] thus only relevant to Fair's burden of proving his condition [had] worsened." *Id.* at 600. Likewise, here, the opinion of Dr. Fabella predates the relevant time period—by nearly two years—and the plaintiff did not attempt to show her condition had worsened.

Moreover, this Court previously found an ALJ did not err when the ALJ did not address medical opinions related to a prior application for benefits. *See Dotson v. Astrue*, 2011 WL 1883468 at *6-8 (E.D. Cal. May 16, 2011). In *Dotson*, the plaintiff argued that "the ALJ committed reversible error" by failing to address a medical opinion offered by Dr. Stoltz, "which was submitted in connection with the first denied application, as Dr. Stoltz required greater limitations… and [the] findings would have supported a determination that Plaintiff was disabled." *Id.* at *6. The Court noted the decision related to an application for SSI benefits that was denied, and the plaintiff did not appeal. *Id.* The plaintiff then filed a second application for SSI benefits, and the ALJ found the plaintiff was not disabled as of the date of the second application. *Id.* The Court observed that because "SSI benefits are not payable for any months prior to the filing of an application,… the relevant time period

concerning Plaintiff's disability for the application currently before the Court began on June 6, 2007, the date of the second application." *Id.* (citing 20 C.F.R. § 416.335. Because "Dr. Stoltz's opinion [was] rendered almost a year before the filing of the current application," the Court concluded the opinion was "stale and not time-relevant to Plaintiff's current claim of disability." *Id*. Rather, the "relevant findings" were opinions related to the time period of the second application. *Id.* at *7-8.

Likewise, the Central District found there was no error in failing to address a medical opinion that related "to the period covered by [a] Plaintiff's prior application for SSI." *Hogle v. Barnhart*, 2006 U.S. Dist. LEXIS 225 at *4 (C.D. Cal. Jan. 4, 2006). The plaintiff's application for SSI benefits was denied by an ALJ, and there was "no indication in the record that the Plaintiff appealed that claim further." *Id.* at *3. The plaintiff then filed a second application, and requested review by the Appeals Council when an ALJ denied the application. In addition, the plaintiff presented new evidence to the Appeals Council, including a medical opinion that was made two years before the filing date of the second application. *Id.* The Appeals Council did not address this evidence, and the plaintiff argued this was an error. *Id.* at *2-3. However, the court rejected the plaintiff's argument, because the opinion presented to the Appeals Council related to the time period adjudicated with the first claim for benefits. *Id.* at *3. The court explained the first denial was "the final decision of the Commissioner with respect to the issue of disability through that date." *Id.* (citing *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) [holding the principle of res judicata applies to administrative decisions]; *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568 (9th Cir. 1983) [prior determination given *res judicata* effect through date of decision]). Consequently, the medical opinion "was irrelevant and immaterial to [the] Plaintiff's [second] claim for benefits." *Id*.

As in *Dotson* and *Hogle*, the application currently before the Court was for SSI benefits, and application date began the relevant time period. Thus, the ALJ was obligated to evaluate Plaintiff's impairments from January 2, 2013—the application date—through the date of the decision on February 20, 2015. Because Dr. Fabella's opinion was rendered on March 29, 2011, the decision was not "time relevant to [the] current claim of disability." *See Dotson*, 2011 WL 1883468 at *7. Rather, it related to the period previously adjudicated by the Social Security Administration, which determined Plaintiff's "condition [was] not severe enough to keep [her] from working." (Doc. 11-5 at 2) Because Plaintiff did

not appeal this decision, the administration's decision that she was not disabled when Dr. Fabella examined her was final. *See Chavez*, 844 F.2d at 693. Consequently, the ALJ did not err in failing to address the medical record related to Plaintiff's prior application, including the decision of Dr. Fabella. *See Fair*, 885 F.2d at 600; *Dotson*, 2011 WL 1883468 at *6-8.

**B.     Opinion of Ms. Williams**

Plaintiff contends the ALJ erred by giving "little weight" to the opinion of Ms. Williamson, a certified physician's assistant. (Doc. 17 at 20) The Social Security Regulations state that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . impairment(s). . . ." 20 C.F.R § 404.1527(a)(2). In contrast, physician's assistants are listed as "other sources" whose opinions may be used ""to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d)(1). Nevertheless, the ALJ must consider the evidence of other sources, such as physician's assistants, in determining if a claimant's impairments are severe. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). To reject the opinion of other sources, an ALJ must identify reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ gave "little weight" to the statements of Ms. Williamson "because the medical evidence of record does not support her opinion, and Ms. Williams provided no basis for reaching her conclusion." (Doc. 11-3 at 31) In addition, the ALJ found "no evidence … that she… treated the claimant for any mental health conditions." (*Id.*) As the Commissioner observes, the Ninth Circuit has determined these are legitimate reasons for giving less weight to an opinion.

   1.     Lack of mental health treatment

Plaintiff contends the ALJ erred in rejecting the mental limitations identified by Ms. Williamson on the grounds that she did not provide treatment for any mental health conditions. (Doc. 17 at 21) According to Plaintiff, "this statement is simply false, and certainly not a germane reason for rejecting her opinion." (*Id.*) Plaintiff notes that she received prescriptions for Ambien and Clonazepam from Ms. Williamson, who diagnosed Plaintiff with recurrent major depression and generalized anxiety disorder. (*Id.*)

Notably, however, the ALJ appears to distinguish between prescription medication and mental health treatment. The ALJ acknowledged that Plaintiff received medication for depression and generalized anxiety disorder, while also noting "the record contains no evidence of psychiatric hospitalization, mental health treatment, or counseling." (Doc. 11-3 at 30) Similarly, Dr. Barbara Moura reviewed the medical record and noted that Plaintiff received prescription medication but received no treatment and was not hospitalized for mental health impairments. (Doc. 11-4 at 9) Thus, the ALJ appears to adopt the distinction made by Dr. Moura between medication and treatment and did not err in considering the lack of mental health treatment as a reason to give less weight to the opinion of Ms. Williamson. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding an ALJ reasonably discounted a physician's opinion where the claimant received conservative treatment).

2.  The medical record and support for the opinions

The Ninth Circuit has determined a conflict with the medical record is a germane reason in support of discounting the opinion of an "other source." *See Turner*, 613 F.3d at 1224 (upholding an ALJ's decision to discount social worker's opinion that conflicted with the medical record); *Putman v. Colvin*, 586 F. App'x 691, 693 (9th Cir. 2014) (holding that the ALJ properly discounted counselor's opinion on the basis that it conflicted with the opinions of physicians). In addition, an opinion may be rejected when it lacks the support of clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (holding that even a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996) ("The ALJ permissibly rejected... reports that did not contain any explanation of the bases of their conclusion").

The ALJ found "the medical record shows that the claimant had little and only conservative treatment of her low, back, right shoulder, and bilateral hip pain."[1] (Doc. 11-3 at 30) Further, the ALJ noted Ms. Williamson did not identify any "basis for reaching her conclusion[s]." (*Id.* at 31) Indeed,

---

[1] Notably, an ALJ may reject claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In *Rollins*, the Ninth Circuit noted the treating physician claimed the plaintiff was disabled, yet "prescribed a conservative course of treatment." *Id.* at 856. The ALJ noted the treating physician's recommendations were not supported by findings and were "not the sort of . . . recommendations one would expect to accompany a finding that Rollins was totally disabled under the Act." *Id.* Likewise, here the ALJ found the treatment Plaintiff received was conservative, though Ms. Williamson opined Plaintiff suffered disabling impairments. (*See* Doc. 11-3 at 30- 31)

11

the form completed by Ms. Williamson related to Plaintiff's physical impairments requests that "relevant treatment notes, laboratory and test results" be attached, but none were identified or attached. (*See* 11-8 at 74) In addition, the form related to Plaintiff's mental impairments includes a section that requests the individual completing it "[d]escribe the medical/clinical findings that support this assessment," but Ms. Williamson did not respond to this section and instead left it blank. (*See id.* at 78) Thus, as the ALJ asserted, Ms. Williamson failed to identify any clinical findings to support her opinions. These germane reasons identified by the ALJ support the decision to give little weight to the opinion of Ms. Williamson. *See Turner*, 613 F.3d at 1224; *Magallanes*, 881 F.2d at 751.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ applied the proper legal standards and did not err in evaluating the medical record. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Mary Ellen Thomas.

IT IS SO ORDERED.

Dated: **January 23, 2018**           **/s/ Jennifer L. Thurston**
                                       UNITED STATES MAGISTRATE JUDGE